## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARELLI AUTOMOTIVE
LIGHTING USA, LLC** and **AXA
INSURANCE COMPANY a/s/o
MARELLI AUTOMOTIVE
LIGHTING USA, LLC**,

                                        Case No. 2:20-cv-10331

                Plaintiffs,

v

**INDUSTRIAS BM DE MEXICO,
S.A. DE C.V.**,

                Defendant.

_____/

MICHELE A. CHAPNICK (P48716)
**GREGORY AND MEYER, P.C.**
Attorneys for Plaintiffs
340 E. Big Beaver Road, Ste. 520
Troy, MI  48083
(248) 689-3920/(248) 689-4560 – Fax
mchapnick@gregorylaw.com

_____/

## <u>COMPLAINT AND JURY DEMAND</u>

**NOW COME** Plaintiffs, MARELLI AUTOMOTIVE LIGHTING USA,

LLC and AXA INSURANCE COMPANY a/s/o MARELLI AUTOMOTIVE

LIGHTING USA, LLC, by and through their attorneys, Gregory and Meyer, P.C.,

upon information and belief, hereby alleges the following:

## **PARTIES & JURISDICTION**

1.     At all relevant times, Plaintiff MARELLI AUTOMOTIVE LIGHTING USA, LLC (hereinafter "Plaintiff Marelli" and/or "Insured"), was and is a domestic limited liability corporation, organized and existing under the laws of the State of Delaware, with principal place of business located at 3900 Automation Avenue, Auburn Hills, Michigan.

2.     At all relevant times, Plaintiff AXA INSURANCE COMPANY, (hereinafter "Plaintiff AXA"), was and is an insurance company, organized and existing under the laws of the State of Delaware, with principal place of business located at 125 Broad Street, 5th Floor, New York, New York.

3.     At all relevant times, Plaintiff AXA issued a policy of insurance to Insured, bearing policy number PRO001902(18) (hereinafter the "Policy").

4.     At all relevant times, upon information and belief, Defendant INDUSTRIAS BM DE MEXICO, S.A. DE C.V. (hereinafter "Defendant"), was and is a foreign corporation, organized and existing under the laws of Mexico, with its principal place of business located at 5440 Eje Vial Juan Gabriel, Cd. Juarez, Chihuahua, Mexico.

5.     Jurisdiction is proper in this Court under 28 USC §1332, because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      On or about November 1, 2012, upon information and belief, Defendant agreed to supply Plaintiff Marelli with molded parts.

7.      On or about November 1, 2012, upon information and belief, Plaintiff Marelli and Defendant entered into a contract titled "SCHEDULING AGREEMENT" formalizing this agreement.

8.      On or about November 1, 2012, upon information and belief, under the terms of the SCHEDULING AGREEMENT, Defendant represented and warranted: "(i) that the goods and services supplied hereunder are compliant and shall perform and operate in accordance with the specifications without error or fault in processing, and (ii) that [Defendant's] operations and systems are compliant, and shall function without error or adversely impacting the quality, timely delivery or production of goods supplied hereunder to [Plaintiff Marelli].  Notwithstanding anything to the contrary contained in this agreement, [Defendant] shall be liable for all direct and indirect damages of [Plaintiff Marelli], including loss of earnings, profits, goodwill, incidental and consequential damages arising from this breach of this warranty."

9.      On or about November 1, 2012, upon information and belief, under the terms of the SCHEDULING AGREEMENT, Defendant agreed: "to assume the risk of and to release, defend, indemnify and save harmless [Plaintiff Marelli] and the

related entities, directors, officers, employees, agents and assigns of [Plaintiff Marelli] from and against all loss, damage, liability, cost and expense (including reasonable attorney's fees) arising out of any injury or death to any person or damage to any property, including damage to or failure of the goods furnished hereunder or damage to other components caused by such failure, resulting from or in any way connected with the performance of this Purchase Order or [Defendant's] breach of this Purchase Order or the goods furnished hereunder, regardless of whether or not such loss, damage, liability, cost or expense is caused in part by [Plaintiff Marelli]."

10.    On or about November 1, 2012, upon information and belief, Defendant owned and operated a manufacturing plant of thermoplastic injection molders located in Ciudad Juarez, Mexico.

11.    On or about November 1, 2012, upon information and belief, the Juarez manufacturing plant produced molded parts.

12.    On or about November 1, 2012, upon information and belief, Defendant intended to use the Juarez manufacturing plant to supply Plaintiff Marelli with the molded parts.

13.    On or about January 13, 2012, upon information and belief, Plaintiff Marelli and Defendant entered into a contract titled "TOOLING LOAN AGREEMENT."

14.     On or about January 13, 2012, upon information and belief, under the terms of the TOOLING LOAN AGREEMENT, Plaintiff Marelli agreed to lend Defendant tooling to enable Defendant to manufacture the products for Plaintiff Marelli at Defendant's manufacturing plant in Ciudad Juarez.

15.     On or about January 13, 2012, upon information and belief, under the terms of the TOOLING LOAN AGREEMENT, Defendant agreed to return the tooling in good repair.

16.     On or about January 13, 2012, upon information and belief, under the terms of the TOOLING LOAN AGREEMENT, Defendant agreed to "bear the entire risk of loss, theft, damage or destruction of the Tooling from any cause whatsoever."

17.     On or about January 13, 2012, upon information and belief, under the terms of the TOOLING LOAN AGREEMENT, Defendant agreed to "provide and maintain insurance against theft, loss or deterioration in an amount at least equal to the Tooling value, with loss payable to" the Plaintiff Marelli.

18.     On or about January 13, 2012, upon information and belief, under the terms of the TOOLING LOAN AGREEMENT, Defendant agreed to "provide and maintain a liability policy insuring [Defendant] against any and all liability for all damages, either to person or property or otherwise, which may have resulted from or in connection with the condition, use, or operation of the Tooling."

19.     On or about April 2, 2018, upon information and belief, a fire occurred at Defendant's Juarez manufacturing plant.

20.     On or about April 2, 2018, upon information and belief, the fire destroyed Defendant's Juarez manufacturing plant.

21.     On or about April 2, 2018, upon information and belief, the fire caused damage to Plaintiff Marelli's tooling lent to Defendant.

22.     On or about April 2, 2018, upon information and belief, Defendant could no longer supply Plaintiff Marelli with molded parts.

23.     On or about April 2, 2018, upon information and belief, Plaintiff Marelli suffered a loss.

24.     On or about April 2, 2018, upon information and belief, Plaintiff Marelli sought payment from Defendant as the listed loss payee of the insurance policies obtained by Defendant pursuant to the Tooling Agreement.

25.     On or about April 2, 2018, upon information and belief, Defendant refused to provide copies of the insurance policies obtained pursuant to the Tooling Agreement after multiple requests from Plaintiff Marelli.

26.     On or about April 2, 2018, Plaintiff Marelli filed a first-party insurance claim with Plaintiff AXA in accordance with the terms of the Policy.

27.     In accordance with the terms of the Policy, Plaintiff AXA issued payment to Plaintiff Marelli.

28.     Due to Defendant's conduct, lack of reasonable conduct, negligent acts and/or omissions, intentional acts and/or omissions, and willful, wanton, reckless and careless acts and/or omissions, the loss to Plaintiffs occurred; and, Plaintiffs suffered damage in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), exclusive of interest and costs of this action.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST DEFENDANT - NEGLIGENCE

29.     Plaintiffs repeat each and every allegation contained in those paragraphs of the Complaint numbered "1" through "28," inclusive, with the same force and effect as though fully and at length set forth herein.

30.     Defendant owed a duty to Plaintiffs to exercise reasonable care during Defendant's use of the tooling provided by Plaintiff Marelli at Defendant's Juarez factory.

31.     Defendant had a duty to Plaintiffs to carefully and properly use the tooling to supply Plaintiff Marelli with molded parts in a manner which did not create a dangerous condition and/or increase the risk of harm to the tooling, pursuant to its agreement with Plaintiff Marelli.

32.     Defendant had a duty to Plaintiffs to properly and safely perform its services with Plaintiff Marelli's tooling so as to minimize the potential for hazardous or harmful conditions, pursuant to its agreement with Plaintiff Marelli.

33.     Defendant breached the aforementioned duties of care.

34.     Defendant breached the aforementioned duties of care and failed to use and exercise ordinary care, and was negligent, reckless, and careless in many of its actions in connection with its use and operation of Plaintiff Marelli's tooling including, without limitation, in the following ways:

    a.     Failing to use due care in its supervision, monitoring, control, use and/or maintenance of Plaintiff Marelli's tooling;

    b.     Failing to use due care in its supervision, monitoring, control, use and/or maintenance of the Juarez factory where Defendant used Plaintiff Marelli's tooling;

    c.     Failing to properly inspect the Juarez factory to discover any imminent hazards posing a risk of harm to Plaintiff Marelli's tooling;

    d.     Failing to implement activities to prevent spread of fire in case of an accident at the Juarez Factory;

    e.     Failing to comply with all applicable laws, rules, codes, standards and/or regulations pertaining to the operation, maintenance and/or use of the Juarez Factory; and/or,

    f.     In other ways as yet unknown and to be learned in the course of discovery.

35.     The aforementioned damage to Plaintiffs was the direct and proximate result of the aforementioned breaches of duties of care by Defendant, and were the direct and proximate result of negligence *per se*, carelessness, recklessness and/or negligent acts and/or omissions of Defendant.

36.     Plaintiffs may also  rely upon the doctrine of *res ipsa loquitur*.

37.     The damages suffered by Plaintiffs do not ordinarily occur in the absence of someone's negligence.

38.     The damages suffered by Plaintiffs were not due to any voluntary action and/or contribution on the part of Plaintiffs.

39.     Defendant was in the exclusive care, custody and control of the instrumentality causing Plaintiffs' damages.

40.     As a direct and proximate result of the aforesaid acts of negligence, negligence *per se*, carelessness, recklessness, and/or negligent acts and/or omissions of Defendant, the destruction occurred and caused Plaintiffs to sustain severe and substantial damages in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), exclusive of interest and costs of this action.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS

($3,748,331.00), for the damage sustained as a result of Defendant's acts and/or omissions, together with pre-judgment and post-judgment interest, attorneys' fees, the costs of this suit, and such other relief as this Court may order.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST DEFENDANT–
## GROSS NEGLIGENCE, RECKLESSNESS, AND WILLFUL AND
## WANTON MISCONDUCT

41.    Plaintiffs repeat each and every allegation contained in those paragraphs of the Complaint numbered "1" through "40," inclusive, with the same force and effect as though fully and at length set forth herein.

42.    At all relevant times, Defendant owed the above referenced duties to Plaintiffs including the duty to exercise reasonable care and due caution in operating, maintaining, and using Plaintiff Marelli's tooling; including, but not limited to, carefully and properly using the tooling to supply Plaintiff Marelli with molded parts in a manner which did not create a dangerous condition and/or increase the risk of harm to the tooling, pursuant to its agreement with Plaintiff Marelli; to properly and safely perform its services with Plaintiff Marelli's tooling so as to minimize the potential for hazardous or harmful conditions, pursuant to its agreement with Plaintiff Marelli.

43.    At all relevant times, Defendant was solely responsible for the operation, maintenance and use of Plaintiff Marelli's tooling, and owed a duty to Plaintiffs to engage in said activities as reasonable and necessary.

44.     At all relevant times, Defendant was solely responsible for assuring that any operation and use of Plaintiff Marelli's tooling was performed in a safe and proper manner, and owed a duty to Plaintiff to engage in said activities, as reasonable and necessary.

45.     Defendant knew or should have known its failure to exercise adequate care in the operation, maintenance and use Plaintiff Marelli's tooling could result in damage to and/or loss of property, and a high degree of danger was present.

46.     Defendant knew or should have known that it was were required to conduct itself with a high degree of caution to avoid the apparent danger posed by the failures alleged above.

47.     Defendant's above failures were in complete disregard for the rights and safety of Plaintiffs and the general public, and the consequences thereof.

48.     Defendant's above conduct and failures evince complete indifference to its duties outlined above, including the duty to avoid damaging the property of Plaintiff Marelli such that Defendant's actions amount to reckless indifference.

49.     Despite all the knowledge held by Defendant, it intentionally, willfully, wantonly, grossly and/or recklessly failed to take the necessary actions as outlined above and acted outside of the bounds of reason.

50.     Defendant's failures as outlined above were of a highly unreasonable conduct, an extreme departure from ordinary care, willful, wanton, grossly negligent and/or reckless.

51.     Defendant's failure to abide by its required conduct and duties owed to Plaintiffs outlined above, were in and of itself an extreme departure from ordinary care.

52.     Defendant's actions and/or omissions outlined above evince conscious indifference to the consequences under circumstances where the probability of harm to Plaintiffs was or should have been reasonably apparent to Defendant.

53.     Defendant did not act out of mere mistake resulting from inexperience, excitement, confusion, thoughtlessness, inadvertence and/or simple inattention.

54.     The damages suffered by Plaintiffs were caused when Defendant engaged in grossly negligent, careless, reckless, and/or willful and wanton misconduct, by failing to take the necessary actions and conduct outlined above.

55.     As a direct and proximate result of the aforesaid acts of willful and wanton conduct, recklessness and/or gross negligence of Defendant, the destruction occurred and caused Plaintiffs to sustain severe and substantial damages in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), exclusive of interest and costs of this action.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00) for the damage sustained as a result of Defendant's acts and/or omissions, together with pre-judgment and post-judgment interest, attorney's fees, the costs of this suit, and such other relief as this Court may order.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>
<u>AGAINST DEFENDANT-</u>
<u>BREACH OF WARRANTY (SCHEDULING AGREEMENT)</u>

56. Plaintiffs repeat each and every allegation contained in those paragraphs of the Complaint numbered "1" through "55," inclusive, with the same force and effect as though fully and at length set forth herein.

57. Pursuant to the terms of the SCHEDULING AGREEMENT, Defendant warranted to Plaintiff Marelli: "(i) that the goods and services supplied hereunder are compliant and shall perform and operate in accordance with the specifications without error or fault in processing, and (ii) that [Defendant's] operations and systems are compliant, and shall function without error or adversely impacting the quality, timely delivery or production of goods supplied hereunder to [Plaintiff Marelli]. Notwithstanding anything to the contrary contained in this agreement, [Defendant] shall be liable for all direct and indirect damages of [Plaintiff Marelli],

including loss of earnings, profits, goodwill, incidental and consequential damages arising from this breach of this warranty."

58.     Defendant breached the warranty contained in the SCHEDULING AGREEMENT by, among other things, failing to ensure that its factory operations and systems would function without error or adversely impact the quality, timely delivery or production of the goods to be supplied to Plaintiff Marelli.

59.     As a direct and foreseeable result of Defendant's breach of the agreement, Plaintiffs incurred extensive financial loss in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), and Defendant is liable for such damages and loss.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), for the damage sustained as a result of Defendant's acts and/or omissions, together with pre-judgment and post-judgment interest, attorney's fees, the costs of this suit, and such other relief as this Court may order.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANT –
## BREACH OF CONTRACT (SCHEDULING AGREEMENT)

60.   Plaintiffs repeat each and every allegation contained in those paragraphs of the Complaint numbered "1" through "59," inclusive, with the same force and effect as though fully and at length set forth herein

61.   Plaintiff Marelli entered into an agreement with Defendant, wherein Defendant had a duty to supply Plaintiff Marelli with plastic molded parts, memorialized in the SCHEDULING AGREEMENT.

62.   Under the terms of the SCHEDULING AGREEMENT, Defendant also had a duty to Plaintiff Marelli and agreed: "to assume the risk of and to release, defend, indemnify and save harmless [Plaintiff Marelli] and the related entities, directors, officers, employees, agents and assigns of [Plaintiff Marelli] from and against all loss, damage, liability, cost and expense (including reasonable attorney's fees) arising out of any injury or death to any person or damage to any property, including damage to or failure of the goods furnished hereunder or damage to other components caused by such failure, resulting from or in any way connected with the performance of this Purchase Order or [Defendant's] breach of this Purchase Order or the goods furnished hereunder, regardless of whether or not such loss, damage, liability, cost or expense is caused in part by [Plaintiff Marelli]."

63.   Defendant's acts and/or omissions, on its own and/or through its employees, agents, servants and/or representatives, which resulted in Defendant's

failure to supply Plaintiff Marelli with the plastic molded parts, was a breach of Defendant's duties and obligations under the agreement.

64.    Defendant's acts and/or omissions, on its own and/or through its employees, agents, servants and/or representatives, which resulted in Defendant's failure to indemnify Plaintiff Marelli was a breach of Defendant's duties and obligations under the agreement.

65.    Plaintiff Marelli performed all of its obligations under the contract and all conditions precedent to Defendant's performance were met at the time Defendant undertook to perform the contract.

66.    As a direct and foreseeable result of Defendant's breach of the agreement, Plaintiffs incurred extensive financial loss in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), and Defendant is liable for such damages and loss.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), for the damage sustained as a result of Defendant's acts and/or omissions, together with pre-judgment and post-judgment interest, attorney's fees, the costs of this suit, and such other relief as this Court may order.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT –
## BREACH OF CONTRACT (TOOLING AGREEMENT)

67.   Plaintiffs repeat each and every allegation contained in those paragraphs of the Complaint numbered "1" through "66," inclusive, with the same force and effect as though fully and at length set forth herein

68.   Plaintiff Marelli entered into an agreement with Defendant, wherein Plaintiff Marelli agreed to lend Plaintiff Marelli's tooling to Defendant to use at its Juarez Factory to produce plastic molded parts, memorialized in the TOOLING AGREEMENT.

69.   Under the terms of the TOOLING AGREEMENT, Defendant owed a duty to Plaintiff Marelli and agreed to return the Tooling to Plaintiff Marelli in good repair.

70.   Defendant failed to return the Tooling to Plaintiff Marelli in good repair.

71.   Under the terms of the TOOLING AGREEMENT, Defendant owed a duty to Plaintiff Marelli and agreed to "bear the entire risk of loss, theft, damage or destruction of the Tooling from any cause whatsoever."

72.   Defendant denied responsibility for the loss, damage and destruction of the Tooling as a result of April 2, 2018 fire at Defendant's Juarez Factory.

73.     Under the terms of the TOOLING AGREEMENT, Defendant owed a duty to Plaintiff Marelli and agreed to "provide and maintain insurance against theft, loss or deterioration in an amount at least equal to the Tooling value, with loss payable to" Plaintiff Marelli.

74.     Defendant failed to obtain and maintain such insurance.

75.     Under the terms of the TOOLING AGREEMENT, Defendant owed a duty to Plaintiff Marelli and agreed: "to provide and maintain a liability policy insuring [Defendant] against any and all liability for all damages, either to person or property or otherwise, which may have resulted from, or in connection with the condition, use, or operation of the Tooling."

76.     Defendant failed to obtain and maintain such a liability policy.

77.     Defendant's acts and/or omissions, on its own and/or through its employees, agents, servants and/or representatives, which resulted in Defendant's failure to supply Plaintiff Marelli with the plastic molded parts and obtain/maintain the required insurance, was a breach of Defendant's duties and obligations under the agreement.

78.     Plaintiff Marelli performed all of its obligations under the contract and all conditions precedent to Defendant's performance were met at the time Defendant undertook to perform the contract.

79.    As a direct and foreseeable result of Defendant's breach of the agreement, Plaintiffs incurred extensive financial loss in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), and Defendant is liable for such damages and loss.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), for the damage sustained as a result of Defendant's acts and/or omissions, together with pre-judgment and post-judgment interest, attorney's fees, the costs of this suit, and such other relief as this Court may order.

<u>**AS AND FOR A SIXTH CAUSE OF ACTION**</u>
<u>**AGAINST DEFENDANT –**</u>
<u>**BREACH OF BAILMENT**</u>

80.    Plaintiffs repeat each and every allegation contained in those paragraphs of the Complaint numbered "1" through "79," inclusive, with the same force and effect as though fully and at length set forth herein

81.    Plaintiff Marelli temporarily gave control over and possession of its tooling to Defendant for the purpose of Defendant using said tooling to produce plastic molded parts.

82.   Plaintiff, as bailor, delivered the tooling to Defendant, creating a bailment.

83.   Defendant, as bailee, had sole, actual and physical possession of the tooling.

84.   Defendant, as bailee, owed Plaintiff Marelli a duty of care to safeguard the tooling.

85.   Defendant, as bailee, failed to adequately care for and maintain the tooling.

86.   Plaintiff Marelli demanded the return of the tooling from Defendant in the same condition it was provided to Defendant.

87.   Defendant has not returned the tooling to Plaintiff Marelli in the same condition is was provided to Defendant.

88.   Defendant breached the bailment because the tooling was damaged and not returned to Plaintiff Marelli in an undamaged condition.

89.   As a direct and foreseeable result of Defendant's breach of the bailment, Plaintiffs incurred extensive financial loss in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), and Defendant is liable for such damages and loss.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant in the amount of at least THREE MILLION, SEVEN HUNDRED FORTY-EIGHT THOUSAND, THREE HUNDRED THIRTY-ONE DOLLARS ($3,748,331.00), for the damage sustained as a result of Defendant's acts and/or omissions, together with pre-judgment and post-judgment interest, attorney's fees, the costs of this suit, and such other relief as this Court may order.

## JURY DEMAND

**NOW COME** Plaintiffs, MARELLI AUTOMOTIVE LIGHTING USA, LLC and AXA INSURANCE COMPANY a/s/o MARELLI AUTOMOTIVE LIGHTING USA, LLC, by and through their counsel, Gregory And Meyer, P.C., and hereby demand trial by jury.

<table>
<tr><td></td><td>/s/ Michele A. Chapnick<br>MICHELE A. CHAPNICK<br><strong>GREGORY AND MEYER, P.C.</strong><br>Attorneys for Plaintiffs<br>340 E. Big Beaver, Ste. 520<br>Troy, MI 48083<br>(248) 689-3920<br>P48716</td></tr>
<tr><td>Dated: February 7, 2020</td><td>mchapnick@gregorylaw.com</td></tr>
<tr><td></td><td>and</td></tr>
<tr><td></td><td>ROBERT A. STERN (Adm. Pending)<br>TIMOTHY F. BROWN (Adm. Pending)<br><strong>CLAUSEN MILLER, P.C.</strong><br>28 Liberty Street, 39th Floor<br>New York, NY 10005<br>(212) 805-3900/(212) 805-3939 (fax)</td></tr>
</table>